UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60146-CR-ZLOCH/Snow

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT YOUNG,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on defendant **Robert Young's** Motion to Dismiss Indictment as Barred by the Statute of Limitations (DE 31) and Motion to Dismiss Counts I or II Based on Multiplicity (DE 32), which were referred to United States Magistrate Judge, Lurana S. Snow, for report and recommendation.

The defendant is charged in a three count indictment with possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 1); aiding and abetting the possession of a firearm by "D.M.," a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) and 2 (Count 2), and obstruction of justice, in violation of 18 U.S.C. § 1503 (Count 3). Counts 1 and 2 both allege possession of a single rifle, a Norinco Sporter 7.62 semi-automatic, and are alleged to have occurred during the same time period: 2001 through June 12, 2002. Count 3 alleges a plan on June 12, 2002, to harm "R.M.," an individual whom the defendant believed to be a cooperating witness.

The defendant argues that the five-year statute of limitations on all counts began to run when he transferred possession of the rifle in question to David Martinez, which occurred some time prior to the defendant's arrest for an unrelated charge on October 25, 2001. Alternatively, the defendant argues that the statute commenced to run in early February 2002, when he had a conversation about the rifle with David Martinez. Since the instant indictment was not returned until June 7, 2007, the defendant asserts that all charges are barred by the statute of limitations.

The defendant also argues that Count 1 (charging him with possessing the rifle as a convicted felon) and Count 2 (charging him with aiding and abetting the possession of the rifle by David Martinez, also a convicted felon) allege the same offense. The defendant contends that because the same facts must be proven to establish these two offense, they are multiplicitous and one of the two must be dismissed.

An evidentiary hearing was conducted on these motions on July 24, 2008.

## I. **FACTS PRESENTED**

Prior to the hearing, the Government filed copies of court documents (DE 50) which establish the following facts:

1. On June 22, 2001, a federal warrant for the defendant's arrest was issued by the District of New Mexico for parole violation, based on the defendant's absconding from

supervision. The defendant had been on parole following conviction in the District of Oklahoma for conspiracy to possess with intent to distribute cocaine. (Exhibit 1)

2. On October 29, 2001, the defendant was arrested on this warrant in Lighthouse Point, Florida. At the time of his arrest, the defendant was in possession of a revolver and approximately $75,000 in United States currency. As a result, a complaint was filed charging the defendant with possession of a firearm as a convicted felon. (Exhibit 2)

3. On November 19, 2001, the defendant stipulated to a bond in the amount of $250,000 corporate surety. He did not post this bond and remained in custody. (Exhibit 3)

4. On November 27, 2001, an indictment was returned charging the defendant with possession of a firearm as a convicted felon on October 29, 2001. (Exhibit 4)

5. On January 31, 2002, the defendant entered a plea of guilty to that offense. (Exhibit 5)

6. On February 7, 2002, a grand jury subpoena was issued to the records custodian of the Federal Detention Center in Miami, Florida (hereinafter "FDC Miami"), seeking recordings of telephone calls made by the defendant from the facility.[1] Production of the

---

[1] The Government proffered that the subpoena was issued as the result of information it received that the defendant was planning to harm his wife's ex-husband because of child custody and visitation problems.

subpoenaed recordings took place over a the next two to three months. (Exhibit 6)

7. Recordings of two January 13, 2002, conversations: the first between the defendant and David Martinez' wife and the second between the defendant and Martinez, suggested that the defendant was planning to cause harm to Roderick "Ricky" Mudrie, whom the defendant believed had provided his address to the police. In those conversations, the defendant referred to a "fishing rod and reel" which the defendant originally had obtained from Mudrie and later had given to Martinez. The defendant instructed Martinez to make sure the "rod and reel" were kept safe so that the defendant's wife could pick them up and return them to Mudrie.[2] (Exhibits 7-8)

8. On June 11, 2002, a search warrant was issued for Martinez' residence, resulting in the seizure of six firearms. (Exhibit 9) The firearms had been identified by Martinez prior to the execution of the warrant, in response to agents' questions regarding any firearms that Martinez had.

9. There was no Nornico Sporter 7.62 caliber rifle among the firearms in Martinez' residence, but agents did find ammunition of that caliber. Following Martinez' arrest on June 11, 2002, and in response to agents' questions about whether Martinez was holding

---

[2] The Government proffered that this conversation was not heard by ATF agents until early June 2002.

4

any firearms for the defendant, Martinez arranged for the production of the Norinco rifle. (Exhibit 10)

10. On June 14, 2002, the defendant was sentenced to ten years imprisonment for possession of the revolver on October 29, 2001 (Exhibit 11).

11. On May 12, 2004, the defendant wrote a letter to ATF Special Agent Pat Kelly requesting that Agent Kelly visit him in prison. (Exhibit 12)

12. On July 20, 2004, Agent Kelly interviewed the defendant in prison. The defendant told Kelly that the "fishing rod" he had discussed with Martinez on January 13, 2002, was the Norinco rifle. The defendant explained that the rifle originally had come from Mudrie and had been placed on one of the defendant's boats. When the boat's captain removed the firearm from the vessel, the defendant needed a place to store it, and he gave it to Martinez. At the time of the telephone conversation with Martinez, the defendant planned to have the rifle returned to Mudrie so that Mudrie could be arrested for being a felon in possession of a firearm. The defendant wanted to do this as "payback" for Mudrie's telling police where the defendant lived, causing the defendant's his arrest for being a felon in possession. (Exhibit 13)

At the hearing on the instant motions, the defendant testified on his own behalf. He stated that he had given the Norinco rifle to Martinez as a present in September 2001, prior to the defendant's arrest in Lighthouse Point. The defendant noted

that during the recorded conversation between himself and Martinez on January 13, 2002, he referred to the rifle as a fishing rod that the defendant had given to Martinez "as a present." (Exhibit 8, p. 2.) According to the defendant, he never told Martinez that Martinez would just be holding the rifle or that the defendant would be back to pick it up. The defendant intended to divest himself of ownership of the weapon.

The defendant related that he has been in custody since his arrest in October 2001. He never contemplated going to trial, and therefore knew he would not be getting out of jail. On January 13, 2002, the defendant placed a telephone call to David Martinez. During the conversation, Ricky Mudrie's name came up. The defendant had known Mudrie, his former brother-in-law, since the early 70s. The defendant told Martinez that he believed Mudrie was the informant who had set him up.

The defendant then asked Martinez if he still had the rifle which is the subject of the instant indictment. Martinez said he still had it. The defendant wanted the gun given back to Mudrie so Mudrie would be arrested as a felon in possession. However, the defendant never followed through on this plan. Instead, the defendant began cooperating with the Government in an effort to get his wife out of jail, and forgot about his plans to set up Mudrie. The defendant had no plans to pick up the weapon because he would not be getting out of jail and had no use for it.

6

The defendant testified that on February 11, 2002, he lost his telephone privileges and was not permitted to use the phone except to call an attorney in the presence of a jail counselor.

After that date, the defendant had no further conversations with Martinez. The defendant was sentenced on June 14, 2002, three days after Martinez' arrest. After Martinez' arrest, Martinez' wife produced the rifle from a location other that Martinez' home. At the defendant's sentencing, AUSA Roger Powell expressed his intention to prosecute the defendant for the rifle.

In late July 2004, the defendant was interviewed by ATF Agent Kelly at the federal prison in Atlanta. The defendant met with the agent for two days, during which they discussed a number of topics, including the rifle.

The defendant testified that he had not seen the rifle since the time he gave it to Martinez in 2001. He reiterated that he had given it to Martinez as a present and did not believe it was his weapon. On cross examination, the defendant acknowledged that during his recorded conversations with Irma and David Martinez, he referred to the rifle as a "fishing rod." The defendant added that he never had any intent to do physical harm to Mudrie.

In rebuttal, ATF Special Agent James Van Vliet testified that following the arrest of David Martinez, Martinez identified the rifle as belonging to the defendant. The rifle had not been

one of the firearms identified by Martinez as his own prior to the execution of the search warrant.

## II. RECOMMENDATIONS OF LAW

### A. Statute of Limitations

The issue before the Court is whether the Norinco rifle was "possessed" by the defendant through June 7, 2002, five years before the instant indictment was returned and within the limitations period. The testimony and documentary evidence presented at the evidentiary hearing demonstrate that the material facts are not in dispute. This Court must determine whether, based on those facts, the defendant retained constructive possession of the firearm after he gave the firearm to Martinez in September 2001 and after he ceased conversing with Martinez in February 2002.

The defendant relies on his statement during his January 13, 2002 conversation with Martinez, when he referred to the fishing rod he had given to Martinez "as a present." Additionally, the defendant states that the plans to set up Mudrie by returning the rifle to him were dropped after that conversation. Therefore, any control he re-asserted over the rifle had ceased prior to June 2002.

A review of the recorded conversations the defendant had with David Martinez and Martinez' wife reveals that the defendant made nine separate references to the fishing rod that Martinez had "put up for me." During the July 20, 2004, interview with Agent Kelly, the defendant stated five times that he had given the rifle

8

to Martinez to "put up for me." The undersigned infers that the defendant had given the rifle to Martinez for safekeeping, not as a gift. This conclusion is bolstered by the fact that the defendant instructed Martinez to keep the rifle in a safe place until the defendant's wife could pick it up and give it back to Mudrie, from whom it had been purchased.

It is true that at the outset of the defendant's recorded conversation with David Martinez, he described the fishing rod as one he had given to Martinez "as a present." However, the undersigned finds that this statement was made in an effort to lead Martinez to the rifle in question, not to indicate that the rifle belonged to Martinez. During the July 20, 2004, interview of the defendant by Agent Kelly, the following exchange took place:

> S/A KELLY: What do you mean by fishing rod? Where does a fishing rod get into this?
>
> YOUNG: I had a Pen-90, uh, rod and reel. Uh, it's an eighteen karat (18k) gold, uh, sport fishing rod.
>
> S/A KELLY: Okay.
>
> YOUNG: And, uh, I used to keep it mounted in my house. And I told David to put my fishing rod and reel up at one time, so I figured he would know what I was talking about. I said the fishing rod and reel is in the back storage area where you work on cars, up on the wall mounted. Well, David had this AK47 mounted up in the corner of his workshop. So, immediately he would go there to look for a fishing rod and reel mounted, he would realize it's the rifle.

(Exhibit 13 at 5.)

9

There is no evidence that the defendant ever told Martinez that he had dropped his plan to have the rifle picked up so it could be returned to Mudrie. Moreover, when Martinez identified his own firearms prior to the execution of the search warrant at his residence, he did not include the rifle. Martinez produced the rifle only after agents asked him if he were holding any firearms for the defendant.

For these reasons, the undersigned finds that the defendant owned and constructively possessed the rifle named in Counts 1 and 2 of the instant indictment until it was seized by federal agents on June 12, 2002. Therefore, the statute of limitations had not run at the time the indictment was returned and the indictment should not be dismissed on this ground.

## B. Multiplicity

The defendant argues that Counts 1 and 2 of the instant indictment are multiplicitous, and that one of them must be dismissed. "Multiplicity is the charging of a single offense in more than one count." United States v. De La Torre, 634 F.2d 792, 794 (5th Cir. 1981). See, United States v. Molinares, 700 F.2d 647 (11th Cir. 1983); Ward v. United States, 694 F.2d 654 (11th Cir. 1983). However, the law is clear that "a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Blockburger v. United States, 234 U.S. 299, 304 (1932).

In the instant case, the defendant is charged in Count 1 with being a felon in possession of a firearm. This charge is based on a theory of <u>constructive</u> possession by the defendant of the rifle in question, and requires proof that the defendant has been convicted of a felony. No proof of Martinez' criminal history or the defendant's knowledge of that history is needed.

Count 2 charges the defendant with aiding and abetting David Martinez, a convicted felon, in the <u>actual</u> possession of the same firearm. In order to convict the defendant of Count 2, the Government must prove that Martinez has a felony conviction and that the defendant knew he had such a conviction. The Government need not prove that the defendant has a felony conviction.

Accordingly, Counts 1 and 2 each require proof of one or more facts that the other does not. Therefore, under <u>Blockburger</u>, <u>supra</u>, Counts 1 and 2 allege separate offenses and are not multiplicitous, and the Government need not elect between the two.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that defendant **Robert Young's** Motion to Dismiss Indictment as Barred by the Statute of Limitations (DE 31) and Motion to Dismiss Counts I or II Based on Multiplicity (DE 32) be DENIED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with The Honorable William J. Zloch, United States District Judge. Failure to file objections

11

timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1998), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 30th day of July, 2008.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Don Chase (FTL)
Paul Donnelly, Esq.